[Civ. No. 9914.   Second Appellate District, Division Two.—April 26, 1935.]

E. RITCHIE, Respondent, v. NATIONAL NIC–NAC STORES, INC. (a Corporation), et al., Defendants; G. L. VEATCH, Appellant.

Tudor Gairdner for Appellant.

Flint & MacKay, Irving G. Bishop and Donald W. Hamblin for Respondent.

STEPHENS, P. J.—A money judgment was made and entered in favor of plaintiff against both defendants. G. L. Veatch alone appeals. The complaint was filed May 21, 1932.

The plaintiff and respondent herein is the assignee of The Lamson Company, Inc., a corporation. As the facts relate to this company and not to the nominal plaintiff we shall refer to plaintiff-respondent as The Lamson Company.

The National Nic-Nac Stores, Inc., was a corporation conducting a so-called chain store business of merchandising.

G. L. Veatch was the owner of 99/100ths of the stock, was a director and president thereof, controlled it completely while other members of his family made up the directorate.

Under the date of May 10, 1929, The Lamson Company submitted a detailed contract and plan for the installation of a pneumatic tube service in one of the "Nic-Nac Stores" to "National Nic-Nac Stores Inc." at the bottom of which is the following paragraph: "The foregoing proposal is void at the option of the contractor (Lamson Company) unless accepted within 10 days from date and is subject to the approval of an executive officer of the contractor, at Syracuse, New York. Submitted May 11, 1929. The Lamson Company, Inc., A. M. Coqueugnoit, Selling Representative."

Another document, in effect an agreement between the parties covering the proposals in the document dated May 10, 1929, was signed as follows, "National Nic-Nac Stores, Inc. By G. L. Veatch, President who represents that he is duly authorized to sign this agreement. (Corporate Seal) Accepted at Syracuse, N. Y. May 24, 1929. The Lamson Company Inc. By F. D. Weeks Asst. Treasurer. (Corporate seal)". This later document was signed by Nic-Nac Stores and Veatch at the same time as the other document was signed, to wit, May 10, 1929.

It seems too obvious to argue about it that these two documents are actually but parts of one agreement and that they became effective as a contract when accepted by the eastern company on May 24, 1929. This was the trial court's finding and is important principally because appellant claims the statute of limitations runs from May 10th instead of from May 24th. We think the statute began running on the later date, as the trial court found.

In view of the issues upon this appeal, it will be well to here state that the *service* of the tube installation and not the apparatus installed, was sold or rented for a ten-year term payable $165 quarterly in advance and that the contract contains the following provision: "These presents are upon the condition that in the event of a breach by the User of any of the covenants or agreements herein contained, or if during the term of this agreement, or any extension thereof, bankruptcy or insolvency proceedings are com-

menced by or against the User, or if the User makes an assignment for the benefit of creditors, or if action is taken by or against the User to accomplish any of these ends, or if receivers are appointed to take possession of the business of the User, or if action is taken to accomplish this end, or if the User discontinues business in these premises, voluntarily or involuntarily, all unpaid amounts to the end of this agreement, or any extension of it, shall, without notice or demand by the Owner, be at once precipitated and become due and payable, and in addition thereto the Owner may enter the premises, forcibly if necessary, take possession of and remove this system and thereby terminate all rights and interests of the User therein. It is agreed that the User's interest therein shall be valued at a sum equal to twenty per cent of the amount of the payments for said unexpired term, and that this amount shall be allowed in deduction of the User's obligation herein.''

■ The service was installed and put in operation and a quarterly payment fell due March 1, 1932, and was not met although a cashier's check purchased by Geo. L. Veatch personally for $165 was tendered May 14, 1932, and was declined. Lamson Company considered the contract breached and brought this action praying for an acceleration of the remaining payments. This tender of the March payment was after Veatch had told the Lamson representative before March 1, 1932, that it would be impossible for the National Nic-Nac Stores to continue with the tube service; that the company could not pay any more money for tubes, and that the Lamson representative should see the company's attorney. The Lamson representative testified that at the same time Mr. Veatch stated to him ''that he wishes us to remove the system because the National Nic Nac Stores did not have a dime, and that it was not possible for them to make any further payments; that they did not intend to do anything that they couldn't do''. This, it appears to us, constitutes a breach of the contract that could not be remedied by a mere delayed tender of the current installment even though the contract does not contain a definite statement that time was of the essence.

■ The trial court also found upon competent evidence: that on January 28, 1932, Veatch as president of the Nic-Nac

Stores sold all the stock in trade of the stores conducted by it to himself individually at less than the true value and on February 3, 1932, as president of the Nic-Nac Company, executed to himself individually a bill of sale to all of the fixtures owned by Nic-Nac Stores; that Veatch continued to conduct the same general kind of business in the premises in which the Lamson tubes were installed; that such sale and such mortgage were fraudulent; that the Nic-Nac Company was the *alter ego* of Veatch; that section 359 of the Code of Civil Procedure (statute of limitations) began to run as of the twenty-fourth day of May, 1929, and the action was not barred; that there was a breach of the contract that accelerated the payments and entered judgment accordingly. The evidence amply supports the court's findings and the judgment that was entered thereupon.

The judgment is affirmed.

Crail, J., concurred.